**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

ANDREW SAYERS,

          Plaintiff,

   v.

MICROSOFT CORPORATION, NINTENDO
OF AMERICA INC., TAKE-TWO
INTERACTIVE SOFTWARE, INC.,
ROCKSTAR GAMES, INC., ROCKSTAR
GAMES UK LIMITED f/k/a ROCKSTAR
NORTH LIMITED and DMA DESIGN
LIMITED, ACTIVISION BLIZZARD, INC.,
TREYARCH CORPORATION, ROBLOX
CORPORATION, EPIC GAMES, INC., and
EPIC GAMES INTERNATIONAL
HOLDINGS, LLC,

          Defendants.

Case No. 4:24-CV-00078-RSB-CLR

Judge: Hon. R. Stan Baker

**MEMORANDUM OF LAW IN SUPPORT OF
NINTENDO OF AMERICA INC. AND
MICROSOFT CORPORATION'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

FACTUAL BACKGROUND ..............................................................................3

LEGAL STANDARD .........................................................................................6

ARGUMENT ......................................................................................................6

I.     Section 230 of the Communications Decency Act Bars All of Plaintiff's Claims
       Against the Platform Defendants. ...........................................................6

       A.     The Platform Defendants Are Providers of "Interactive Computer
              Services." ......................................................................................8

       B.     Plaintiff's Claims Treat the Platform Defendants as Publishers.............9

              1.     Plaintiff's Allegations Target Quintessential Publishing Activity.
                     ..........................................................................................9

              2.     Plaintiff Cannot Plead Around Section 230 by Relabeling His
                     Claim. ...............................................................................12

       C.     The Video Games at Issue Were Created and Developed by Third
              Parties. ........................................................................................17

II.    The First Amendment Bars Plaintiff's Claims Against the Platform Defendants.
       ..........................................................................................................19

III.   Plaintiff's Claims Independently Must Be Dismissed For Failure To State a
       Claim. ..................................................................................................22

       A.     Plaintiff's Product Liability Claims Fail. ............................................23

       B.     Plaintiff's Negligence Claims Fail. ....................................................26

              1.     Georgia Law Imposes No Duty to Protect from or Warn About
                     Third-Party Harms. .............................................................26

              2.     Plaintiff Fails to State a Negligence *Per Se* Claim Based on
                     Alleged COPPA Violations. .................................................27

              3.     Georgia's UDTPA Safe Harbor Bars Plaintiff's Negligence
                     Claim Premised on a UDTPA Violation. ................................29

       C.     Plaintiff's Fraud-Based Claims Fail. ..................................................29

       D.     The Platform Defendants Did Not Proximately Cause Plaintiff's Alleged

Injuries. .................................................................................................................33

    E.      Plaintiff's Remaining Claims Against the Platform Defendants Fail. ...................34

CONCLUSION ...........................................................................................................................35

# TABLE OF AUTHORITIES

**CASES**

PAGE(S)

*Alltrade, Inc. v. McDonald*, 445 S.E.2d 856 (Ga. Ct. App. 1994).................................................23

*Almeida v. Amazon.com, Inc.*, 456 F.3d 1316 (11th Cir. 2006)....................................................2, 7

*Alvear v. Sandy Springs Toyota, Inc.*, 775 S.E.2d 172 (Ga. Ct. App. 2015) ...............................26

*American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010) ....................................................................................................................................30

*Anastasio v. Internap Network Servs. Corp.*, 2011 WL 13124500 (N.D. Ga. Sept. 30, 2011) .......................................................................................................................................30

*Anglin v. BI LO, LLC*, 640 F. Supp. 3d 1393 (S.D. Ga. 2022), *aff'd*, 2023 WL 6232511 (11th Cir. Sept. 26, 2023) ...........................................................................................24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .........................................................................................6

*Barmapov v. Amuial*, 986 F.3d 1321 (11th Cir. 2021) ...............................................................22

*Barnes v. AstraZeneca Pharmaceuticals LP*, 253 F. Supp. 3d 1168 (N.D. Ga. 2017) .......................................................................................................................................34

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009)............................................................6, 12

*Bauser v. Porsche Cars N. Am., Inc.*, 2024 WL 2406884 (N.D. Ga. Mar. 25, 2024) ...........................................................................................................................31

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................................6

*Bradley Center, Inc. v. Wessner*, 296 S.E.2d 693 (Ga. 1982)........................................................27

*Brazil v. Janssen Research & Development LLC*, 196 F. Supp. 3d 1351 (N.D. Ga. 2016) .......................................................................................................................................25

*Brazil v. Janssen Research & Development LLC*, 249 F. Supp. 3d 1321 (N.D. Ga. 2016) .......................................................................................................................................34

*Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786 (2011) .................................................19

*Burdakin v. Hub Motor Co.*, 357 S.E.2d 839 (Ga. Ct. App. 1987)................................................26

*Chicago Lawyers' Committee for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666 (7th Cir. 2008) .......................................................................................................33

*Coffee v. Google, LLC*, 2022 WL 94986 (N.D. Cal. Jan. 10, 2022) ............................8, 11, 12, 18

*Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140 (E.D.N.Y. 2017), *aff'd in part, Force v. Facebook, Inc.*, 934 F.3d 53 (2d Cir. 2019) ...........................................................17

*Coleman v. H2S Holdings, LLC*, 230 F. Supp. 3d 1313 (N.D. Ga. 2017), *aff'd sub nom. Coleman v. Oasis Outsourcing, Inc.*, 779 F. App'x 649 (11th Cir. 2019).....................31

*Coney v. Mylan Pharms., Inc.*, 2012 WL 170143 (S.D. Ga. Jan. 19, 2012)................................25

*Crosby v. Twitter, Inc.*, 921 F.3d 617 (6th Cir. 2019) ...................................................33

*Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961 (N.D. Ill. 2009)........................................17

*Day v. TikTok, Inc.*, 2022 WL 595745 (N.D. Ill. Feb. 28, 2022)....................................15, 17

*Department of Labor v. McConnell*, 828 S.E.2d 352 (Ga. 2019) .......................................26

*Dixon v. Allergan USA, Inc.*, 645 F. App'x 930 (11th Cir. 2016) ..................................30

*Doe v. Dominique*, 2014 WL 12061534 (N.D. Ga. Apr. 9, 2014)......................................9

*Doe v. Grindr Inc.*, 709 F. Supp. 3d 1047 (C.D. Cal. 2023), *appeal docketed*, No. 24-475 (9th Cir. Jan. 29, 2024) .........................................................13

*Doe ex rel. Doe v. Grindr, LLC*, 2023 WL 7053471 (M.D. Fla. Oct. 26, 2023), *appeal docketed*, No. 23-13874 (11th Cir. Nov. 28, 2023) .................................14, 16

*Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008) ...................................................14

*Dowbenko v. Google Inc.*, 582 F. App'x 801 (11th Cir. 2014) ...............................2, 7, 9

*Dutt v. Mannar & Co., LLC*, 841 S.E.2d 132 (Ga. Ct. App. 2020) .............................26

*Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093 (9th Cir. 2019) .................10, 12, 17, 27

*East Coast Test Prep LLC v. Allnurses.com, Inc.*, 971 F.3d 747 (8th Cir. 2020).........................18

*Eberhart v. Amazon.com, Inc.*, 325 F. Supp. 3d 393 (S.D.N.Y. 2018)........................................25

*Elder v. Reliance Worldwide Corp.*, 563 F. Supp. 3d 1221 (N.D. Ga. 2021)..............................23

*Entertainment Software Ass'n v. Blagojevich*, 469 F.3d 641 (7th Cir. 2006)..............................20

*Estate of B.H. v. Netflix, Inc.*, 2022 WL 551701 (N.D. Cal. Jan. 12, 2022), *aff'd*, 2024 WL 808797 (9th Cir. Feb. 27, 2024) .........................................................24

*Estate of Bride v. Yolo Technologies, Inc.*, 2024 WL 3894341 (9th Cir. Aug. 22, 2024) ........................................................................13, 14, 15, 16

*In re Facebook, Inc.*, 625 S.W.3d 80 (Tex. 2021) .................................................................13, 14

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008).................................................................................................................10

*Federal Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107 (N.D. Cal. 2020) .................................................................................................................................11

*Fields v. Twitter, Inc.*, 881 F.3d 739 (9th Cir. 2018) ...................................................................33

*Force v. Facebook, Inc.*, 934 F.3d 53 (2d Cir. 2019) ..............................................................7, 17

*Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975 (N.D. Cal. 2015)............................8, 9

*Ginsberg v. Google Inc.*, 586 F. Supp. 3d 998 (N.D. Cal. 2022).............................................16, 27

*Great Northern Insurance Co. v. Amazon.com, Inc.*, 524 F. Supp. 3d 852 (N.D. Ill. 2021) .................................................................................................................................16

*Griffin v. Google*, 2020 WL 6781624 (S.D. Ga. Nov. 18, 2020), *report and recommendation adopted*, 2020 WL 7249622 (S.D. Ga. Dec. 09, 2020).........................14, 19

*Griffin v. Philips*, 2023 WL 6147795 (S.D. Ga. Sept. 20, 2023)...................................................23

*Grossman v. Rockaway Township*, 2019 WL 2649153 (N.J. Super. Ct. June 10, 2019) ................................................................................................................................25

*Halberstein Inv., Ltd. v. Lehman Bros., Inc.*, 2006 WL 314334 (S.D. Fla. Jan. 10, 2006) ................................................................................................................................32

*Herceg v. Hustler Mag., Inc.*, 814 F.2d 1017 (5th Cir. 1987)  ....................................................22

*Herrick v. Grindr LLC*, 765 F. App'x 586 (2d Cir. 2019)................................................12, 13, 16

*Hinton v. Amazon.com.dedc, LLC*, 72 F. Supp. 3d 685 (S.D. Miss. 2014) ..................................11

*Honeyfund.com Inc. v. Governor, Florida*, 94 F.4th 1272 (11th Cir. 2024) ...............................21

*Hopkins v. Doe*, 2011 WL 5921446 (N.D. Ga. Nov. 28, 2011)...........................2, 7, 9, 10, 13, 15

*Infrasource, Inc. v. Hahn Yalena Corp.*, 613 S.E.2d 144 (Ga. Ct. App. 2005) ...........................30

*Inman v. Am. Paramount Fin.*, 517 F. App'x 744 (11th Cir. 2013) ............................................30

*Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994 (C.D. Cal. 2022) ..................................................25

*James v. Meow Media, Inc.*, 300 F.3d 683 (6th Cir. 2002)...........................................................27

*Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12 (1st Cir. 2016)...........................................10

*Johnson v. Arden*, 614 F.3d 785 (8th Cir. 2010)................................................................6

*Johnson v. Avis Rent A Car System, LLC*, 858 S.E.2d 23 (Ga. 2021) ...........................33

*Karpinski v. Union Leader Corp.*, 2019 WL 3203144 (D.N.H. July 16, 2019) .........................29

*Kimzey v. Yelp! Inc.*, 836 F.3d 1263 (9th Cir. 2016) ....................................................13

*Klayman v. Zuckerberg*, 753 F.3d 1354 (D.C. Cir. 2014) .......................................17, 27

*Knieper v. Forest Group USA, Inc.*, 2016 WL 9449794 (N.D. Ga. Sept. 12, 2016),
    *order clarified*, 2017 WL 3449601 (N.D. Ga. Jan. 23, 2017) ................................31

*L.H. v. Marriott International, Inc.*, 604 F. Supp. 3d 1346 (S.D. Fla. 2022) .................7

*Lowe v. SEC*, 472 U.S. 181 (1985) ................................................................................30

*L.W. ex rel. Doe v. Snap Inc.*, 675 F. Supp. 3d 1087 (S.D. Cal. 2023)..........................8, 9, 14, 15

*M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041
    (E.D. Mo. 2011) ........................................................................................12, 18

*M.H. v. Omegle.com, LLC*, 2022 WL 93575 (M.D. Fla. Jan. 10, 2022), *appeal
    docketed*, No. 22-10338 (11th Cir. Jan. 31, 2022) .................................................16

*Maddox v. Aldridge Pite, LLP*, 2024 WL 1475463 (11th Cir. Apr. 5, 2024)...............30

*Marion A. Allen, Inc. v. Johnston*, 903 S.E.2d 334 (Ga. Ct. App. 2024) .....................31

*Martin v. BioLab, Inc.*, 2008 WL 11322914 (N.D. Ga. Mar. 31, 2008) ......................32

*McCabe v. Daimler AG*, 160 F. Supp. 3d 1337 (N.D. Ga. 2015) ................................32

*McCall v. Zotos*, 2023 WL 3946827 (11th Cir. June 12, 2023) ...........................2, 7, 8

*McCullough v. Finley*, 907 F.3d 1324 (11th Cir. 2018) ................................................6

*Mitchell v. Ford Motor Credit Co.*, 68 F. Supp. 2d 1315 (N.D. Ga. 1998)..................32

*Monroe v. Savannah Electric & Power Co.*, 471 S.E.2d 854 (Ga.
    1996) ........................................................................................................23

*Montano v. Washington State Department of Health*, 2024 WL 3029155 (S.D. Fla.
    May 28, 2024), *report and recommendation adopted*, 2024 WL 3026528 (S.D.
    Fla. June 17, 2024)..................................................................................12

*Moody v. NetChoice, LLC*, 144 S. Ct. 2383 (2024)....................................2, 19, 20, 21

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982).........................................22

- vi -

*Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250 (4th Cir. 2009).......................7

*NetChoice, LLC v. Bonta*, 2024 WL 3838423 (9th Cir. Aug. 16, 2024) .....................................20

*NetChoice, LLC v. Griffin*, 2023 WL 5660155 (W.D. Ark. Aug. 31, 2023) ...............................19

*New Mexico ex rel. Balderas v. Tiny Lab Productions*, 457 F. Supp. 3d 1103 (D.N.M. 2020), *on reconsideration*, 516 F. Supp. 3d 1293 (D.N.M. 2021)...........................28

*Next Century Communications Corp. v. Ellis*, 171 F. Supp. 2d 1374 (N.D. Ga. 2001) ..........................................................................................................................................30

*Ochoa v. Zeroo Gravity Games, LLC*, 2023 WL 4291974 (C.D. Cal. Feb. 1, 2023) ...................34

*Otto v. City of Boca Raton*, 981 F.3d 854 (11th Cir. 2020) ..........................................................21

*Paredes v. Bank of America, N.A.*, 2018 WL 1071935 (M.D. Fla. Feb. 27, 2018) .......................32

*Quashie v. Olympus America, Inc.*, 315 F. Supp. 3d 1329 (N.D. Ga. 2018) ................................29

*Roca Labs, Inc. v. Consumer Opinion Corp.*, 2014 WL 6389657 (M.D. Fla. Nov. 16, 2014) ..................................................................................................................................34

*Rodriguez v. OfferUp, Inc.*, 2019 WL 13247290 (M.D. Fla. Aug. 29, 2019)............. 13, 14, 15, 16

*S K Hand Tool Corp. v. Lowman*, 479 S.E.2d 103 (Ga. Ct. App. 1996) .......................................25

*Sanders v. Acclaim Entertainment, Inc.*, 188 F. Supp. 2d 1264 (D. Colo. 2002) ...................24, 27

*Schneider v. Tri Star International, Inc.*, 476 S.E.2d 846 (Ga. Ct. App. 1996) ...........................23

*Seaboard Coast Line Railroad v. Mobil Chemical Co.*, 323 S.E.2d 849 (Ga. Ct. App. 1984) ................................................................................................................................24

*Sec. Life of Denver Ins. Co. v. Shah*, 2012 WL 4321601 (S.D. Ga. Sept. 18, 2012)...................32

*Sheridan v. iHeartMedia, Inc.*, 255 F. Supp. 3d 767 (N.D. Ill. 2017) ..........................................29

*Shortnacy v. North Atlanta Internal Medicine, P.C.*, 556 S.E.2d 209 (Ga. Ct. App. 2001) ..................................................................................................................................26, 27

*Smith v. California*, 361 U.S. 147 (1959) ................................................................................19, 22

*Smith v. K-V Pharmaceutical Co.*, 2009 WL 10665762 (N.D. Ga. Sept. 24, 2009)....................31

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) .........................................................................19

*Todd v. Capella Logistics, Inc.*, 2022 WL 3345962 (N.D. Ga. Aug. 12, 2022) ...........................22

*United States v. EZ Lynk SEZC*, 2024 WL 1349224 (S.D.N.Y. Mar. 28, 2024) .........................18

*Video Software Dealers Ass'n v. Webster*, 968 F.2d 684 (8th Cir. 1992) ......................................................................................................22

*In re VTech Data Breach Litigation*, 2018 WL 1863953 (N.D. Ill. Apr. 18, 2018) .....................29

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015) ...........................22

*Weinberg v. City of Chicago*, 310 F.3d 1029 (7th Cir. 2022) ......................................................19

*Whitney Information Network, Inc. v. Xcentric Venture, LLC*, 199 F. App'x 738 (11th Cir. 2006) .......................................................................................................8

*Whitney Information Network, Inc. v. Xcentric Ventures, LLC*, 2008 WL 450095 (M.D. Fla. Feb. 15, 2008) ...........................................................................................11

*Williams v. Dresser Industries, Inc.*, 120 F.3d 1163 (11th Cir. 1997) .........................................31

*Williams v. Pacific Cycle, Inc.*, 661 F. App'x 716 (11th Cir. 2016) ............................................23

*Wollschlaeger v. Governor, Florida*, 848 F.3d 1293 (11th Cir. 2017) (en banc) ........................21

*Wozniak v. YouTube, LLC*, 100 Cal. App. 5th 893 (2024) *as modified on denial of reh'g* (Apr. 2, 2024) ..............................................................................13, 14, 15

*Zeran v. Am. Online, Inc.*, 129 F.3d 327 (4th Cir. 1997) .........................................................2, 7

*Ziemba v. Cascade International, Inc.*, 256 F.3d 1194 (11th Cir. 2001) ......................................31

*Ziencik v. Snap, Inc.*, 2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) .............................................25

STATUTES

Children's Online Privacy Protection Act, 15 U.S.C. § 6501 *et seq.* ......................................27, 28

47 U.S.C. § 230 ......................................................................................................7, 8, 17

O.C.G.A. § 10-1-374(a)(2) ............................................................................................29

O.C.G.A. § 10-1-390 *et seq.* ..........................................................................................26

O.C.G.A. § 10-1-399 ....................................................................................................26

O.C.G.A. § 51-1-11.1 ....................................................................................................23

## OTHER AUTHORITIES

Amended Complaint, *Estate of B.H. v. Netflix, Inc.*, No. 21-6561 (N.D. Cal. Sept. 22, 2021), ECF No. 22 ........................................................................................24

Statement of Basis and Purpose, Children's Online Privacy Protection Rule, 78 Fed. Reg. 3972 (Jan. 17, 2013) ........................................................................................28

Complaint, *Angelilli v. Activision Blizzard, Inc.*, No. 23-cv-16566 (N.D. Ill.), ECF No. 1 ........................................................................................................................4

FTC, *Complying with COPPA: Frequently Asked Questions* (July 2020), https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions#A.%20General%20Questions ....................................28

Platform Defendants' Memorandum of Law in Support of its Motion to Dismiss, *Antonetti v. Activision Blizzard, Inc.*, No. 24-cv-2019 (N.D. Ga.), ECF No. 70-1 ........................................................................................................1, 4

Response in Opposition, *Angelilli v. Activision Blizzard, Inc.*, No. 23-cv-16566 (N.D. Ill.), ECF No. 162 ................................................................................4

*Restatement (Third) of Torts: Products Liability*, § 19 cmt. d (June 2024 Update) ....................24

## INTRODUCTION

Plaintiff Andrew Sayers seeks to impose broad-based liability on video games—recognized by the Supreme Court as constitutionally protected speech—because he believes the speech to be too enticing, engaging, and "addictive." He has sued not only the developers that designed the games, but also online platforms through which those games can be downloaded, and in some instances, accessed and played. These claims are the digital equivalent of suing a bookstore for distributing or facilitating access to allegedly harmful books or other third-party content. Plaintiff's effort to extend Georgia tort law to curtail the distribution of constitutionally protected expression should be rejected as a matter of law.[1]

This memorandum is filed on behalf of two companies that operate online platforms[2] and are collectively referred to herein as the "Platform Defendants": Nintendo and Microsoft.[3] Plaintiff does not allege that the Platform Defendants had any role in creating or developing the third-party games at issue and, in fact, acknowledges that the games were created and developed by the

---

[1] This is one of more than a dozen cases raising similar claims, including two cases pending in the Northern District of Georgia. *See Antonetti v. Activision Blizzard, Inc. et al.*, No. 1:24-cv-02019-TWT (N.D. Ga.); *Broussard v. Microsoft Corp., et al.*, No. 1:24-cv-01697-TWT (N.D. Ga.).

[2] "Platform," as used in this Brief, includes applications (apps), online services, storefronts, and marketplaces, and/or websites operated by the Platform Defendants through which third-party content, including video games, is made available to users.

[3] Nintendo and Microsoft are each concurrently filing a motion to compel arbitration. They join this brief only if the Court denies their respective arbitration motions. Nintendo and Microsoft do not waive, and specifically assert, their rights under their arbitration agreements, including any appellate rights to have the proper forum resolved before any claims proceed on the merits in court.

Consistent with the Joint Motion for Extension of Time and To Modify Page Limits and subsequent Order by the Court that contemplated separate briefing for Microsoft in its role as purported developer and platform, ECF Nos. 35, 36, Microsoft addresses the claims against it relating to Xbox services in this brief, but addresses the claims against it relating to *Minecraft* and allegations regarding Microsoft's purported role in developing *Call of Duty* in the separate motion titled "Motion To Dismiss Of Defendants Microsoft Corporation, et al." along with the memorandum in support of that motion. Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, Microsoft adopts all arguments made in that motion and supporting brief.

Developer Defendants. *See* Complaint ¶¶ 329, 362, 393, 400, 437, 465–466, 472–474.[4] Instead, he

seeks to hold the Platform Defendants liable because they make the third-party games available on

their Internet-based platforms.

The arguments for dismissal in the Developer Defendants' memorandum (the "Developers'

Brief"), which the Platform Defendants incorporate here, require dismissal against all Defendants.

The claims against the Platform Defendants also fail for several additional reasons:

*First*, Plaintiff's claims are barred by Section 230 of the Communications Decency Act, 47

U.S.C. § 230, which precludes liability for "any cause of action that would make service providers

liable for information originating with a third-party user of the service." *Dowbenko v. Google Inc.*,

582 F. App'x 801, 804 (11th Cir. 2014) (quoting *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316,

1321 (11th Cir. 2006)). In enacting Section 230, Congress sought to ensure that "companies that

serve as intermediaries for other parties' potentially injurious messages" are not deterred from

distributing online speech because of potential tort liability. *Hopkins v. Doe*, 2011 WL 5921446,

at *1 (N.D. Ga. Nov. 28, 2011) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330–31 (4th Cir.

1997)); *see McCall v. Zotos*, 2023 WL 3946827, at *2 (11th Cir. June 12, 2023) (discussing the

"obvious chilling effect" of such liability). Section 230 forecloses Plaintiff's effort to hold the

Platform Defendants liable for disseminating third-party content.

*Second*, the First Amendment protects the Platform Defendants for their role in making

games available to the public. Video games are creative works entitled to full constitutional

protection, and it is equally well established that the First Amendment shields platforms that

publish, curate, and facilitate the dissemination of those works. *See Moody v. NetChoice, LLC*, 144

---

[4] All citations are "cleaned up"—that is, citations and internal marks omitted—unless otherwise
specified.

S. Ct. 2383, 2402 (2024) ("organizing and presenting" "third-party speech" is "expressive activity of its own"). These principles bar all of Plaintiff's claims against the Platform Defendants.

*Third*, apart from Section 230 and the First Amendment, the Complaint should be dismissed as an impermissible shotgun pleading, and in any event, the claims should be dismissed because they fail as a matter of state law. (1) Plaintiff does not state viable product liability claims (Counts I–VI). Those claims target the Platform Defendants' dissemination of information, which falls outside the scope of Georgia product liability law. In addition, the platforms are services, not products, and in any event, Plaintiff identifies no alleged defect in the platforms. (2) Plaintiff does not state viable negligence claims (Counts IV–IX, and XIII) because (a) the Platform Defendants had no legal duty to protect Plaintiff from alleged harms stemming from third-party games; and (b) Plaintiff does not allege any actual statutory violations, including under the Children's Online Privacy Protection Act ("COPPA") or the Georgia Uniform Deceptive Trade Practices Act ("UDTPA"). (3) Plaintiff's fraud-based claims (Counts XI–XIII, XIVa[5]) fail because he has not identified any alleged misrepresentations or omissions by the Platform Defendants sufficient to satisfy Federal Rule of Civil Procedure 8—let alone Rule 9(b). (4) The Complaint does not sufficiently allege that the Platform Defendants' conduct proximately caused Plaintiff's purported injuries—a deficiency fatal to all of Plaintiff's claims.

## FACTUAL BACKGROUND

The Platform Defendants offer popular online storefronts and/or services (the Nintendo eShop and Microsoft Xbox services) through which users can browse and download video games

---

[5] Plaintiff's Complaint contains two Count XIVs. The first Count XIV alleges fraudulent misrepresentation and appears in the Complaint between Count X and Count XI. The second Count XIV alleges civil conspiracy and appears after Count XIII. For ease of reference, the Platform Defendants cite the fraudulent misrepresentation claim as Count XIVa and the civil conspiracy claim as Count XIVb.

onto various mobile devices or media consoles. *See* Compl. ¶¶ 273, 287, 299, 318.

Plaintiff, who was 23 years old when he filed the Complaint, allegedly began playing video games at age 10. Compl. ¶¶ 29–30. He allegedly plays *Fortnite* on Nintendo Switch and *Roblox, Minecraft*, *Call of Duty Black Ops III* & *IV, Fortnite*, and *Grand Theft Auto V* ("*GTA V*") on Xbox One and Xbox X/S for about five to nine hours per day. *Id.* ¶ 23. The Complaint does not identify when or from where Plaintiff allegedly downloaded these games, when he started playing them on any specific device, or how often he plays on each.[6]

Plaintiff does not claim that Nintendo created or developed the games at issue or played a role in designing allegedly addictive content in the third-party games; and with respect to Microsoft, Plaintiff claims that Microsoft had a role in the games only with respect to *Minecraft* and *Call of Duty*, which Microsoft addresses in the Developers' Brief. Yet, the Complaint presses the same claims against the Platform Defendants as against the Developer Defendants, alleging the following:

**Making Third-Party Games Available.** The gravamen of each of Plaintiff's claims against the Platform Defendants is that they house video games: they provide "a product-platform through

---

[6] Plaintiff alleges that certain of the third-party games are "available" through certain of the Platform Defendants' platforms. *Id.* ¶¶ 334, 361, 402, 439, 479 (*Call of Duty*, *Grand Theft Auto*, *Fortnite*, *Roblox*, and *Minecraft* available through either the Xbox Store or Xbox Cloud Gaming); *id.* ¶ 479 (*Fortnite* available through the Nintendo eShop). Despite Plaintiff alleging a conspiracy between Nintendo and the "GTA Defendants," *see, e.g.*, *id.* ¶¶ 850–851, *Grand Theft Auto V* is not available on the Nintendo eShop or Nintendo Switch. Plaintiff's counsel knew this before filing the complaint, as Nintendo brought the error to the attention of Bullock Mason LLP, counsel for Plaintiff, in February 2024, after the firm made the same false allegation in *Angelilli v. Activision Blizzard, Inc.*, No. 23-cv-16566 (N.D. Ill.), ECF No. 1 (Complaint) ¶¶ 29–30, 387– 388. Plaintiff acknowledged the error in *Angelilli* but did not correct it, and the factual inaccuracy has persisted in subsequent briefing. *See Angelilli*, No. 23-cv-16566 (N.D. Ill.), ECF No. 162 (Resp. in Opp'n) at 16, 31, 64. Nintendo also notified Plaintiff's counsel of the error in *Antonetti v. Activision Blizzard, Inc.*, No. 24-cv-2019 (N.D. Ga.), ECF No. 70-1 (Platform Defendants' Memorandum of Law in Support of its Motion to Dismiss) at 5 n.4.

which users can purchase thousands of games . . . through digital download." Compl. ¶¶ 287, 318. Plaintiff faults the Platform Defendants for offering "never-ending availability" of "constantly evolving game librar[ies]" that allegedly "encourages users to stay engaged with the streaming platform, by ensuring they always have something new and different to play." *Id*. ¶¶ 214, 306. He also alleges, without detail, that the Platform Defendants had "licensing agreements" with the Developer Defendants "to keep users[] . . . addicted to Defendants' video games." *Id.* ¶ 73; *see also id. ¶¶* 545, 572(f).

*Allowing Third-Party Games to Offer Game Content for a Fee.* According to Plaintiff, once a game is downloaded, Nintendo and Microsoft provide "framework[s]" for games to offer "microtransactions." *Id*. ¶¶ 301–302, 320–321. He alleges that a microtransaction involves purchasing "in-game items or perks," *id.* ¶ 103, like additional "characters" and "skins," *id.* ¶¶ 757(d), (f), new game levels, *id.* ¶ 380, and virtual "loot boxes," which may contain prizes that can enhance the game experience, *id*. ¶¶ 138–147. He does not claim that the Platform Defendants create these in-game items or perks, or that so-called microtransactions work any differently for games than for any other content available via the platforms.

While Plaintiff alleges that he "cannot refrain from . . . spending money while using Defendants' products," *id.* ¶ 266, he does not claim to have engaged in any microtransactions through Nintendo's or Microsoft's platforms. He instead vaguely claims that the Platform Defendants receive revenue from transactions made via their platforms. *Id.* ¶¶ 303, 322.

*Failing to Warn Users of the Allegedly Addictive Nature of the Third-Party Games*. Plaintiff alleges, without pointing to any particular platform or game, that the Platform Defendants knew and failed to warn that their platforms "house" games that were "designed to addict" minors and have "an inherent risk of abuse, addiction, and compulsive use." *See, e.g.*, *id*. ¶¶ 315, 327,

589(a)–(b), 777(a)–(b).

***Fraudulently Misrepresenting the Platforms and the Third-Party Games.*** Plaintiff alleges, again without differentiation, that the Platform Defendants "misrepresented" their respective platforms as "safe for use by minors and young adults" and the third-party games as "safe or even beneficial for children to use." *See, e.g.*, *id*. ¶¶ 775(a)–(b), 777. He cites a single statement by Microsoft—"Microsoft markets the Xbox Store as 'safer for the whole family' to use," *id*. ¶ 289—and no allegedly false or misleading statements by Nintendo.

***Enabling User Communications.*** Plaintiff further alleges that Microsoft "allows . . . users to connect with each other" through social chatting and friending features. *Id*. ¶¶ 308–312. He does not, however, allege that he used those features.

## LEGAL STANDARD

A complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must accept as true the complaint's factual allegations and draw reasonable inferences from them. *McCullough v. Finley*, 907 F.3d 1324, 1330 (11th Cir. 2018). But conclusory factual allegations are not assumed true, and the court must reject "possib[le]" and "conceivable" claims if not "plausible." *Ashcroft v. Iqbal,* 556 U.S. 662, 679–80 (2009) (quoting *Twombly*, 550 U.S. at 570).

## ARGUMENT

**I.    Section 230 of the Communications Decency Act Bars All of Plaintiff's Claims Against the Platform Defendants.**

To "promote the free exchange of information and ideas over the Internet," *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099–1100 (9th Cir. 2009), Congress "established a general rule that providers of interactive computer services are liable only for speech . . . properly attributable to them," *Johnson v. Arden*, 614 F.3d 785, 791 (8th Cir. 2010). Accordingly, Section 230(c)(1)

provides that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).

The Eleventh Circuit has interpreted Section 230 to "preclude[ ] courts from entertaining claims that would place a computer service provider in a publisher's role." *McCall*, 2023 WL 3946827, at *2 (quoting *Zeran*, 129 F.3d at 330) (recognizing that "[t]he majority of federal circuits have interpreted the CDA to establish broad federal immunity to any cause of action that would make service providers liable for information originating with third party user of the service"); *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006). That is, Section 230 bars any lawsuit that seeks to hold a platform liable for its "exercise of a publisher's traditional editorial functions," including "whether to publish, withdraw, postpone or alter" third-party content (as Plaintiff's suit does with respect to third-party games). *Dowbenko*, 582 F. App'x at 805 (quoting *Zeran*, 129 F.3d at 330); *see also Hopkins*, 2011 WL 5921446, at *1 (explaining that Section 230 prevents plaintiffs from imposing "tort liability on companies that serve as intermediaries for other parties' potentially injurious messages").

Because Section 230 "protect[s] websites not merely from ultimate liability, but from having to fight costly and protracted legal battles," *L.H. v. Marriott International, Inc.*, 604 F. Supp. 3d 1346, 1364 (S.D. Fla. 2022), the immunity attaches "at the earliest possible stages of the case"—including at the pleading stage, *Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009); *see also Dowbenko*, 582 F. App'x at 805; *Force v. Facebook, Inc.*, 934 F.3d 53, 63 n.15 (2d Cir. 2019).

Section 230 immunity is governed by a three-part test. The statute bars any claim where: (1) the defendant is an "interactive computer service"; (2) the claim would treat the defendant as

a "publisher" of content; and (3) that content was "provided by *another* information content provider." *McCall*, 2023 WL 3946827, at *2–3. Where a complaint on its face satisfies these requirements, the court must dismiss it. *McCall*, 2023 WL 3946827, at *2–3 (affirming dismissal where defendants published information developed by third party); *Whitney Info. Network, Inc. v. Xcentric Venture, LLC*, 199 F. App'x 738, 739–40 (11th Cir. 2006) (same).

Courts repeatedly have applied Section 230 to dismiss similar claims seeking to hold platforms liable for distributing allegedly harmful third-party content in the form of "apps," like the video games at issue here. *See, e.g.*, *L.W. ex rel. Doe v. Snap Inc.*, 675 F. Supp. 3d 1087, 1092 (S.D. Cal. 2023) (dismissing product liability, misrepresentation, and consumer protection claims "stemming from allegations that [the] Snapchat application . . . is an inherently dangerous software product"); *Coffee v. Google, LLC*, 2022 WL 94986, at *1, *5 (N.D. Cal. Jan. 10, 2022) (dismissing consumer protection claims based on Google's distribution of game apps with "Loot Boxes"); *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 983 (N.D. Cal. 2015) (dismissing misrepresentation claims based on apps available on Android and Kindle devices). This Court should reach the same result.

## A.     The Platform Defendants Are Providers of "Interactive Computer Services."

Section 230 defines an "interactive computer service" as an information service that "provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Plaintiff alleges that defendants provide such services: According to Plaintiff, the Platform Defendants offer "online," "cloud-based" "platforms" through which users can "download" and "stream[]" third-party video game applications that "run[] . . . on remote servers." *E.g.*, Compl. ¶¶ 4, 13, 207–208, 213. These are textbook interactive computer services under Section 230. *E.g.*, *Coffee*, 2022 WL 94986, at *5 (Google's Play Store is an interactive computer

service); *Free Kick Master*, 140 F. Supp. 3d at 981 (Amazon and Google app stores are "paradigmatic interactive computer services"); *L.W.*, 675 F. Supp. 3d at 1095 ("creator, owner, and operator" of an app is an interactive computer service).

> **B.    Plaintiff's Claims Treat the Platform Defendants as Publishers.**

A claim treats a service provider "as a publisher[]" under § 230(c)(1) if it targets the decision "whether to publish, withdraw, postpone or alter content." *Dowbenko*, 582 F. App'x at 805. Here, all of Plaintiff's claims seek to impose liability on the Platform Defendants for disseminating third-party games. Section 230 bars these claims because that theory of liability targets quintessential publishing activities, and each cause of action (*e.g.*, product liability, fraud, emotional distress) merely repackages an effort to impose forbidden publisher liability under a different pleading label.

> **1.    Plaintiff's Allegations Target Quintessential Publishing Activity.**

The core theory underlying all of Plaintiff's claims is that the Platform Defendants made the third-party games available to him and failed to protect him from alleged harms caused by playing those games. For example, Plaintiff faults the Platform Defendants for allegedly designing their platforms to "house" "addictive gaming products." *E.g.*, Compl. ¶ 539(a)–(b).

This theory runs headlong into Section 230. It seeks to premise liability on the Platform Defendants' publication of third-party speech on their platforms, in contravention of Section 230's immunity for "intermediaries" that publish allegedly harmful speech. *Hopkins*, 2011 WL 5921446, at *1; *Doe v. Dominique*, 2014 WL 12061534, at *10 (N.D. Ga. Apr. 9, 2014) (same).[7] The Platform Defendants could avoid liability on Plaintiff's theory only by declining to publish games

---

[7] The allegation that the Platform Defendants designed their platforms to house addictive gaming products is undermined by the variety of games and/or apps the Platform Defendants house, the overwhelming majority of which are not even remotely at issue in this case.

that Plaintiff deems addictive, or by monitoring all content available through their platforms to restrict or condition access to any potentially "addictive" game. This contravenes Section 230. *Hopkins*, 2011 WL 5921446, at \*1; *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008) (Section 230 was "enacted to protect websites" from "liability for failure to remove offensive content").

    None of Plaintiff's efforts to escape that conclusion are viable.

    *First*, Plaintiff alleges that the Platform Defendants designed their platforms to "attract users to purchase games and in-game content" and "ensure minor users continually purchase addictive [content]." Compl. ¶¶ 304, 323, 542(a)–(b), 758(a)–(b). This is core publishing activity. A platform's decisions about how third-party content is presented, notifications about third-party content, and "features and functions" "meant to facilitate the communication and content of others" are all protected by Section 230. *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019); *see also, e.g.*, *Force*, 934 F.3d at 66–67 (use of algorithms to "arrang[e]" and "distribut[e]" third-party information and to "match that information with a consumer's interests" is an "essential result of publishing").

    Indeed, "it would turn Section 230(c)(1) upside down" to hold that publishers of third-party content shed their statutory immunity by becoming especially adept at performing the functions of publishers. *Force*, 934 F.3d at 67. A platform's design choices to boost engagement are publishing decisions, just like a newspaper's decisions about which pieces to include above the fold. Courts have thus held that Section 230 bars claims that fault platforms for how they promote and organize third-party content. *See, e.g.*, *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 21 (1st Cir. 2016) (choices "about what content can appear on the [platforms] and in what form" are "traditional publisher functions" protected by Section 230); *Force*, 934 F.3d at 66–67 (Section 230

protects decisions about "where on their sites . . . particular third-party content should reside and to whom it should be shown").

*Second*, Section 230 applies to claims that the Platform Defendants provide developers a "framework" to publish content for which developers charge a fee. Plaintiff does not allege that providing tools that allow developers to sell in-game content, which Plaintiff labels as "microtransactions," is itself problematic or illegal. Instead, as alleged, microtransactions are a way for *developers* to offer certain in-game content—such as "special characters with unique skills"—or to allow users to have different in-game experiences (such as new game levels). Compl. ¶¶ 118, 156, 380. Plaintiff's theory is that the Platform Defendants are liable because they publish this enhanced in-game content and facilitate the enhanced in-game experiences, but the content and the experiences are third-party speech. Whether the Platform Defendants profit from the so-called microtransactions is irrelevant, as "there is no 'for-profit exception to § 230's'" protection. *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1119 (N.D. Cal. 2020); *see, e.g.*, *Hinton v. Amazon.com.dedc, LLC*, 72 F. Supp. 3d 685, 690 n.9 (S.D. Miss. 2014) ("website operator's . . . receipt of profits from online sales" does not "control[]" the Section 230 analysis); *Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, 2008 WL 450095, at *10–12 (M.D. Fla. Feb. 15, 2008) (publication of third-party posts protected even though defendants were alleged to have sold advertisements and solicited donations on the website).

For instance, in a similar case, a court held that Section 230 barred claims based on Google's distribution of apps containing loot boxes, notwithstanding that Google earned revenue from their sale. *See Coffee*, 2022 WL 94986, at *1. Here, too, Plaintiff's allegations that game developers use the platforms to make content available for a fee within their games do not take his claims outside of Section 230's protections.

*Third*, Plaintiff cannot evade Section 230 by claiming Microsoft provides "addictive" "social" communication tools "that allow users to play with and view the games played by friends and other users." Compl. ¶¶ 539(a), 757(a). Plaintiff does not allege that he used these features. Even if he had, these allegations target content created by third-party *users* and the social features Microsoft operates to facilitate the creation of that third-party content. Such claims impermissibly seek to hold Microsoft "liable for providing 'neutral assistance' in the form of tools and functionality" that help users communicate. *Herrick v. Grindr LLC*, 765 F. App'x 586, 591 (2d Cir. 2019); *see also Dyroff*, 934 F.3d at 1098 (Section 230 immunizes "tools meant to facilitate the communication and content of others"). Because such claims—even couched as addressing a platform's "design and operation"—boil down to attacking services for enabling the exchange of third-party content, they are "inextricably linked to [the] alleged failure to edit, monitor, or remove" such content. *Herrick*, 765 F. App'x at 590–91; *see Barnes*, 570 F.3d at 1102 ("what matters" is whether "the duty that the plaintiff alleges" involves the defendant's exercise of editorial functions); *M.A. ex rel. P.K. v. Vill. Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1049 (E.D. Mo. 2011) (Section 230 barred claims where the defendant offered a "neutral tool that did nothing more than provide" a forum for communication); *Coffee*, 2022 WL 94986, at *7 (same, where "Google did no more than provide neutral tools" to access third-party content).

## 2.      Plaintiff Cannot Plead Around Section 230 by Relabeling His Claim.

Section 230's protections depend not on "the name of the cause of action," but on "whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d at 1101–02; *see also Montano v. Wash. State Dep't of Health*, 2024 WL 3029155, at *14 (S.D. Fla. May 28, 2024) (same), *report and recommendation adopted*, 2024 WL 3026528 (S.D. Fla. June 17, 2024). Plaintiff cannot plead

around this immunity where, at bottom, he "seeks to hold [Platform Defendants] liable for simply publishing the [games at issue] and the consequences which flow from that decision." *Hopkins*, 2011 WL 5921446, at \*2; *Rodriguez v. OfferUp, Inc.*, 2019 WL 13247290, at \*3 (M.D. Fla. Aug. 29, 2019) (rejecting "artful pleading" to frame claims as stemming from platform's own actions); *accord Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1266 (9th Cir. 2016) ("declin[ing] to open the door to . . . artful skirting" of Section 230). Simply asserting that the claims are about "conduct," not content, is therefore no answer. What is at issue here is *publishing conduct*, and however Plaintiff labels the claims, they are barred by Section 230.

**Product Liability and Negligence Claims (Counts I, IV, VII–IX).** It is the "unanimous view" of every court to consider the question that Section 230 bars "claims alleging that defectively designed internet products allowed for transmission of harmful third-party" content. *In re Facebook, Inc.*, 625 S.W.3d 80, 94 (Tex. 2021). That is because such a claim is impermissibly premised on the theory that a platform owes a duty to a plaintiff by "mere[ly]" "transmit[ing]" allegedly harmful "third-party content" to that plaintiff. *Id.* at 93; *see, e.g.*, *Estate of Bride v. Yolo Technologies, Inc.*, 2024 WL 3894341, \*7 (9th Cir. August 22, 2024) (Section 230 barred product-liability claims against online app based on anonymity feature that allegedly facilitated "harassing and bullying [third-party] posts"); *Wozniak v. YouTube, LLC*, 100 Cal. App. 5th 893, 912–13 (2024), *as modified on denial of reh'g* (Apr. 2, 2024) (Section 230 barred negligent design claims); *Doe v. Grindr Inc.*, 709 F. Supp. 3d 1047, 1052–53 (C.D. Cal. 2023) (same for product defect and negligence claims based on allegations that app "facilitates the exchange of sexually explicit material"), *appeal docketed*, No. 24-475 (9th Cir. Jan. 29, 2024); *Facebook*, 625 S.W.3d at 93–94 (same for negligence and product liability claims alleging duty to "protect [users] against recruitment into sex trafficking by other users"); *Herrick*, 765 F. App'x at 590–91 (manufacturing

- 13 -

and design defect); *L.W.*, 675 F. Supp. 3d at 1095– 96 (design defect).

Plaintiff cannot plead around this rule by framing his claims as seeking to hold the Platform Defendants liable for their allegedly negligent "failure to implement any measures to protect" users from harmful third-party content. *Facebook*, 625 S.W.3d at 93; *Doe ex rel. Doe v. Grindr, LLC*, 2023 WL 7053471, at \*2 (M.D. Fla. Oct. 26, 2023), *appeal docketed*, No. 23-13874 (11th Cir. Nov. 28, 2023); *see Wozniak*, 100 Cal. App. 5th at 912–13. Such claims are "merely another way of claiming that [the platform is] liable for publishing the communications" of third parties. *Doe v. MySpace, Inc.*, 528 F.3d 413, 419–20 (5th Cir. 2008); *see Grindr*, 2023 WL 9066310, at \*3 (Section 230 barred claim that Grindr's minimal age verification was "product defect").

**Fraud Claims and Product Liability Claims Based on an Alleged Failure to Warn (Counts II-III, V-VI, VIII-IX, XI-XIII, XIVa).** Section 230 likewise bars claims based on an alleged failure to warn, whether sounding in product liability and negligence or misrepresentation. Claims that a platform must add warnings to third-party content inescapably seek to impose liability "for not moderating content in some way, whether through deletion, change, or suppression," *Bride*, 2024 WL 3894341, at \*7—tasks that go "to the heart of 'publishing functions[,]'" *Rodriguez*, 2019 WL 13247290, at \*3; *accord Facebook*, 625 S.W.3d at 94 ("The warnings Plaintiffs seek would only be necessary because of Facebook's allegedly inadequate policing of third-party content transmitted via its platforms."); *Griffin v. Google*, 2020 WL 6781624, at \*4 (S.D. Ga. Nov. 18, 2020) (dismissing claims against platforms, including for failure to warn, as barred by Section 230), *report and recommendation adopted*, 2020 WL 7249622 (S.D. Ga. Dec. 9, 2020).

Permitting Plaintiff to avoid Section 230 by asserting failure-to-warn claims "would allow essentially every state cause of action otherwise [barred] by [S]ection 230 to be pleaded as a failure

to warn of such information published by a defendant," which "runs counter" to established authority. *Wozniak*, 100 Cal. App. 5th at 914–15; *see also, e.g.*, *Rodriguez*, 2019 WL 13247290, at *3 (rejecting failure-to-warn claim as "artful pleading tactic" barred by Section 230); *Day v. TikTok, Inc.*, 2022 WL 595745, at *1–2 (N.D. Ill. Feb. 28, 2022) (rejecting claim that TikTok "did not put any warning" on sexually explicit third-party videos); *accord Bride*, 2024 WL 3894341, at *7; *L.W.*, 675 F. Supp. 3d at 1100 (similar). Here, for example, the only way the Platform Defendants could comply with a purported duty to warn that their platforms "house addictive gaming products," *e.g.*, Compl. ¶ 629(a)–(b), would be by monitoring every game they host to somehow determine which ones may (in Plaintiff's view) be "addictive." Section 230 bars Plaintiff from imposing such a vague duty via state tort law.

Plaintiff's fraud-based claims only repackage his product liability theory; they are primarily premised on the allegation that the Platform Defendants failed to disclose that their platforms "house" games allegedly "designed to addict" minors and pose "an inherent risk of abuse, addiction, and compulsive use." *E.g.*, Compl. ¶¶ 315, 327, 775(a)–(b), 791(a)–(b), 810, 832 833(a)–(b). The Complaint identifies a single non-actionable statement by Microsoft purporting to be fraud—that it markets the Xbox Store as "safer for the whole family" to use. Compl. ¶ 289. (It cites no allegedly false or misleading statement by Nintendo.) But this claim, too—even framed as fraud or a violation of consumer-protection laws—is barred by Section 230. *See, e.g.*, *Hopkins*, 2011 WL 5921446 at *1 & n.2 (denying as futile motion to amend to include fraudulent misrepresentation claim "based upon [the platform's] failure to police third-party conduct"); *L.W.*, 675 F. Supp. 3d at 1095–96 (dismissing fraudulent and negligent misrepresentation claims against

app platforms).[8]

**Emotional Distress Claim (Count X).** Plaintiff alleges harm supposedly caused by the Platform Defendants' allowing users to download a wide variety of games and other third-party content. Compl. ¶¶ 757(a)–(b), 758(a)–(b). This, too, is a quintessential publisher liability claim because it seeks to hold the Platform Defendants liable for publishing third-party content. *Grindr*, 2023 WL 7053471, at *2 (dismissing IIED and negligence claims where theory of liability was "inextricably linked" to publication of third-party content); *M.H. v. Omegle.com, LLC*, 2022 WL 93575, at *5 (M.D. Fla. Jan. 10, 2022) (dismissing IIED claim against defendant that was "rooted in the creation and maintenance of the platform"), *appeal docketed*, No. 22-10338 (11th Cir. Jan. 31, 2022); *see also, e.g.*, *Ginsberg v. Google Inc.*, 586 F. Supp. 3d 998, 1005 (N.D. Cal. 2022) (same, where "Google's alleged activity boil[ed] down to deciding whether to exclude material (Telegram) that a third party seeks to place in the online Play Store"); *Herrick*, 765 F. App'x at 591 (same).

**Conspiracy and In-Concert Liability Claims (Counts XIVb, XV).** Likewise, Plaintiff's conspiracy and in-concert liability claims seek to fault the Platform Defendants for publishing the third-party games. Liberally construed, the complaint appears to allege that the Platform Defendants "conspired" and "acted in concert" with the Developer Defendants to "distribute" and "supply"—that is, to publish—the third-party games. Compl. ¶¶ 848–853, 855–856, 858, 860,

---

[8] *See also Bride,* 2024 WL 3894341, at *7 (dismissing products liability claims framed as failure to warn that "fault[] [defendant] for not mitigating, in some way, the harmful effects of the . . . content."); *Grindr*, 2023 WL 9066310 at *5–6 (dismissing product liability and negligence claims repackaged as misrepresentation); *Rodriguez*, 2019 WL 13247290, at *3 (rejecting "attempts to plead around" Section 230 with claims that "try[] to hold [a platform] responsible for content published by its users by asserting failure to warn and fraud claims"); *Great N. Ins. Co. v. Amazon.com, Inc.*, 524 F. Supp. 3d 852, 860 (N.D. Ill. 2021) (Section 230 barred negligent misrepresentation claim based on allegation that Amazon "allow[ed] the posting" of harmful third-party content).

869–871. Courts consistently reject such claims under Section 230. *E.g.*, *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 147, 161 (E.D.N.Y. 2017) (dismissing conspiracy claim based on Facebook's publication of third-party content), *aff'd in part, Force*, 934 F.3d 53.

## C.   The Video Games at Issue Were Created and Developed by Third Parties.

Section 230's requirement that the allegedly harmful content be provided by "another information content provider" is not plausibly in dispute here. 47 U.S.C. § 230(c)(1); *id.* § 230(f)(3). Plaintiff does not allege that the Platform Defendants created the game content or were responsible for the games' design or development.[9] Instead, he alleges that the Developer Defendants "manufactured," "developed," "prepared," and "assembled" the third-party games. Compl. ¶¶ 41–71; *compare id.* ¶¶ 8, 13–14, 111, 116, 123, 171, 205, 352, 370, 381, 422, 458, 509 (describing allegedly addictive features and microtransactions developers created and "built *into*," "*within*," "*in*," and "*inside*" the games (emphases added)), *with id.* ¶¶ 273, 318. "[A] website does not create or develop content when it merely provides a neutral means by which third parties can post information of their own independent choosing online." *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014); *accord Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 968–69 (N.D. Ill. 2009) (a website that provides a "neutral tool" allowing users to search for third-party content is not an information content provider); *Day*, 2022 WL 595745, at *2 (Section 230 barred claim against TikTok stemming from videos uploaded to its service).

This remains true despite Plaintiff's conclusory non-specific allegations about the Platform Defendants "act[ing] in concert and enter[ing] into [patent] licensing agreements" with the Developer Defendants to "keep users . . . addicted to Defendants' video games." Compl. ¶¶ 73,

---

[9] As stated above, Microsoft addresses the allegations relating to its alleged role in developing *Call of Duty* and *Minecraft* in the concurrently filed Developer Defendants' motion to dismiss.

846, 870. A plaintiff "fail[s] to plausibly allege" that service providers are "'information content provider[s]'" under Section 230 where "the sum total of the complaint's factual allegations plead[s] no more than a 'sheer possibility' that [defendants were] wholly or partly responsible for creating or developing" the material at issue. *E. Coast Test Prep LLC v. Allnurses.com, Inc*., 971 F.3d 747, 752 (8th Cir. 2020). Plaintiff here has done even less: Any implication that the Platform Defendants "collaborated in the creation of" the third-party games is "'contradicted by [the] more specific allegations' in the Complaint" that the Developer Defendants created the third-party games. *United States v. EZ Lynk SEZC*, 2024 WL 1349224, at *11 (S.D.N.Y. Mar. 28, 2024).

Finally, Plaintiff's allegations that the Platform Defendants offer a "framework" allowing developers to offer microtransactions (Compl. ¶¶ 301–302, 320–321) do not transform the Platform Defendants into information content providers. Just as "[t]he fact that a website elicits online content for profit is immaterial," so too is the fact that the Platform Defendants offer a way for the third-party game developers to profit from their work; "the only relevant inquiry is whether the interactive service provider 'creates' or 'develops' that content." *Vill. Voice Media*, 809 F. Supp. 2d at 1050; *accord E. Coast Test Prep.*, 971 F.3d at 752 (terms of service stating that provider may solicit and pay users for content does not render it an "information content provider"). As in *Coffee*, "[b]ecause the facts alleged in the [Complaint] establish that the game apps and Loot Boxes downloaded by Plaintiff were created by third parties, and that [the Platform Defendants] did no more than provide neutral tools to all developers across the Play Store, the co-developer exception to § 230 . . . does not apply." 2022 WL 94986, at *7.

The Platform Defendants readily satisfy the three-part test that governs Section 230 protections. The claims against them therefore must be dismissed.

**II.     The First Amendment Bars Plaintiff's Claims Against the Platform Defendants.**

The First Amendment independently bars Plaintiff's claims against the Platform Defendants. The First Amendment bars the claims against the Platform Defendants for the same reasons pointed out by the Developer Defendants: video games are protected speech, as is gaming content. *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 794 (2011); Developers' Brief § I. These First Amendment protections are not limited to those who create or originate speech. Both "the creation and dissemination of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011); *accord Brown*, 564 U.S. at 792 n.1 (First Amendment protects "creating, distributing, or consuming speech"); *Smith v. California*, 361 U.S. 147, 150 (1959) (invalidating conviction of bookstore owner for housing and distributing obscene books); *Weinberg v. City of Chicago*, 310 F.3d 1029, 1045 (7th Cir. 2022) ("The sale of a book is a form of expression.").

Moreover, as the Supreme Court recently confirmed, online publishing platforms enjoy independent First Amendment rights when engaged in "compiling and curating others' speech." *Moody*, 144 S. Ct. at 2401. That is because "[d]eciding on the third-party speech that will be included in or excluded from a compilation—and then organizing and presenting the included items—is expressive activity of its own." *Id.* at 2402; *see also id.* at 2400 ("expressive activity includes presenting a curated compilation of speech originally created by others."). And, of course, the users have their own First Amendment rights to access and engage with speech on such platforms. *See Brown*, 564 U.S. at 794–95; *accord NetChoice, LLC v. Griffin*, 2023 WL 5660155, at *17 (W.D. Ark. Aug. 31, 2023) (enjoining state law limiting minors' access to online platforms).

These principles bar Plaintiff's claims against the Platform Defendants. Regardless of label, these claims are premised on the Platform Defendants' choices about what games (and other

content) to publish on their platforms and how those games are presented to users. *Supra* § I.B.1. Plaintiff thus seeks to impose liability on the Platform Defendants for exercising their First Amendment rights to distribute protected third-party speech and to engage in what the Supreme Court confirmed constitutes protected "editorial discretion in the selection and presentation of content" on their platforms. *Moody*, 144 S. Ct. at 2402.

As the Developer Defendants explain, couching such direct challenges to speech and expression in the guise of product liability or failure-to-warn claims—or the language of addiction—makes no difference.[10] Developers' Brief § 1.B. Just as a plaintiff may not sue a bookstore for selling addictive books, he cannot evade the First Amendment by alleging the bookstore failed to warn the public that a popular book series may lead to an addiction to reading. *Cf. Ent. Software Ass'n v. Blagojevich*, 469 F.3d 641, 653 (7th Cir. 2006) (affirming preliminary injunction of statute requiring that video game retailers label sexually explicit games). Indeed, requiring the Platform Defendants to post warnings about purported risks of games would be a form of compelled speech that would burden their First Amendment rights to distribute and present third-party speech. *See Moody*, 144 S. Ct. at 2399 n.3 (explaining that "requirements [that a platform post warnings] violate the First Amendment if they unduly burden expressive activity"). As the Ninth Circuit recently confirmed, the First Amendment's prohibitions on compelled speech bar efforts to use state law to force internet platforms to "opine on and mitigate the risk that children may be exposed to harmful or potentially harmful materials." *NetChoice v. Bonta*, 2024 WL 3838423, at *2 (9th Cir. Aug. 16, 2024) (enjoining law requiring platforms to prepare reports

---

[10] As explained below, *see infra* § III.C, while Plaintiff asserts various supposed fraud-based claims, he does not identify any actionable fraudulent or misleading statement by the Platform Defendants. Instead, his fraud and consumer-protection claims reduce to, at best, failure-to-warn claims by other names.

addressing, inter alia, "[w]hether the design of the online product … could harm children, including by exposing children to harmful, or potentially harmful, content").

Similarly, Plaintiff cannot escape First Amendment protections by attempting to separate the Platform Defendants' supposed "conduct" in designing their platforms from the underlying content disseminated. Comp. ¶¶ 17, 269, 707, 765. As discussed, Plaintiff does not seek to hold the Platform Defendants liable for design choices distinct from their dissemination of purportedly addictive and harmful third-party gaming content. *Supra* § I.B.1. And, it is well established that "[w]hen the conduct [at issue] depends on—and cannot be separated from—the ideas communicated, a law is functionally a regulation of speech" and is treated "just like any other content-based speech restriction under the First Amendment." *Honeyfund.com Inc. v. Governor, Fla.*, 94 F.4th 1272, 1278 (11th Cir. 2024). Accordingly, the Eleventh Circuit has repeatedly rejected attempts to disguise speech-based claims as targeting conduct. *See Otto v. City of Boca Raton*, 981 F.3d 854, 861 (11th Cir. 2020) (rejecting effort to "evade the First Amendment's ordinary presumption against content-based speech restrictions by saying that the plaintiffs' speech is actually conduct"); *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1308 (11th Cir. 2017) (en banc) (same).

Indeed, the Supreme Court in *Moody* just rejected a materially identical attempt to recast regulation of speech as targeting only conduct. There, the Court explained that the Fifth Circuit was "wrong in concluding that … restrictions on the platforms' selection, ordering, and labeling of third-party posts do not interfere with expression." 144 S. Ct. at 2399. So too here. Plaintiff's suggestion that the Platform Defendants' "content choices" are "not speech" reflects "a serious misunderstanding of First Amendment precedent and principle." *Id.*

Furthermore, even if video games were not protected speech, the Platform Defendants

- 21 -

could only be held liable if they had actual "knowledge" of the speech's unlawful character and nature. *Smith*, 361 U.S. at 153; *accord Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 690 (8th Cir. 1992) (applying Smith to bar liability for disseminating allegedly harmful videos). Here, Plaintiffs' claims sound in strict liability and negligence, and they allege only in the most conclusory and generalized fashion that the Platform Defendants "knew" that the games at issue "contained an inherent risk of abuse, addiction, and compulsive use by minors." Compl. ¶ 777(a)–(b). Such conclusory and unsupported allegations do not afford the "precision of regulation" the First Amendment demands. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916–17 (1982); *accord Herceg v. Hustler Mag., Inc*., 814 F.2d 1017, 1024 (5th Cir. 1987) (explaining that "[m]ere negligence" "cannot form the basis of liability" for publishing allegedly dangerous speech).

## III.   Plaintiff's Claims Independently Must Be Dismissed For Failure To State a Claim.

Section 230 and the First Amendment independently bar all claims against the Platform Defendants. But the claims each have numerous other fatal defects. As an initial matter, the Complaint is an impermissible shotgun pleading: Every count adopts the entirety of the preceding counts, *see, e.g.*, Compl. ¶¶ 534, 563, and the Complaint "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions," *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). Neither is permitted, and both independently require dismissal. *Id*.; *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (shotgun pleading is "flatly forbidden"). Plaintiff's pleading failure is particularly acute given the Complaint's length, the number of claims and Defendants, and the paucity of specific allegations against the Platform Defendants, which combined make it impossible for the Platform Defendants to have "adequate notice of the claims against [it] and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323; *see also Todd v. Capella*

*Logistics, Inc*., 2022 WL 3345962, at \*2–3 (N.D. Ga. Aug. 12, 2022) (dismissing "improper shotgun pleading" where complaint's "counts each incorporate all allegations of the preceding counts"); *Griffin v. Philips*, 2023 WL 6147795, at \*2 (S.D. Ga. Sept. 20, 2023) (Baker, J.) (similar).

Even if this Court was to overlook this fundamental defect, however, Plaintiff's claims are deficient under Georgia law for the reasons that follow.

### A.   Plaintiff's Product Liability Claims Fail.

Plaintiff's product liability claims fail for several reasons. *First*, Georgia law categorically excludes from strict liability (Counts I–III) a "product seller," defined as a company that "distributes; . . . markets; . . . or otherwise is involved in placing a product in the stream of commerce." O.C.G.A. § 51-1-11.1. The effect of this exclusion, "Georgia courts have made clear," is that strict liability is "confine[d] . . . to actual manufacturers" that had "an active role in the production [and] design" of a product that allegedly caused harm. *Williams v. Pac. Cycle, Inc.,* 661 F. App'x 716, 718 (11th Cir. 2016) (collecting cases). By contrast, a strict liability claim cannot proceed against companies, like the Platform Defendants, that distributed but did not design any so-called products at issue. *E.g.*, *Elder v. Reliance Worldwide Corp.*, 563 F. Supp. 3d 1221, 1241 n.8 (N.D. Ga. 2021) ("design defect claim cannot proceed against [a retailer]"); *Alltrade, Inc. v. McDonald*, 445 S.E.2d 856, 858 (Ga. Ct. App. 1994) (same, even where seller "affixes its label . . . and sells [product] under its name"); *Schneider v. Tri Star Int'l, Inc.*, 476 S.E.2d 846, 847–48 (Ga. Ct. App. 1996) (same, where seller imposed specifications on manufacturer).

*Second*, all of Plaintiff's product liability claims (Count I–VI) fail for the independent reason that they target the dissemination of information, not a "product." A product is something that can be "measured, bought and sold, changed in quantity or quality, delivered wherever desired and [is subject to] larceny." *Monroe v. Savannah Elec. & Power Co.*, 471 S.E.2d 854, 856 (Ga.

1996). Here, "[P]laintiff's grievance . . . is with the information" transmitted in the third-party games and not with any measurable product itself. *Restatement (Third) of Torts: Products Liability*, § 19 cmt. d (June 2024 Update); Developers' Brief § II.C.1 (arguing same). Plaintiff's claimed injury supposedly flows from expressive content within games, not the platform used to transmit it. *See also, e.g.*, *Sanders v. Acclaim Ent., Inc.*, 188 F. Supp. 2d 1264, 1279 (D. Colo. 2002) (dismissing product claims against developers and distributors of violent video games).[11]

*Estate of B.H. v. Netflix, Inc.*, 2022 WL 551701 (N.D. Cal. Jan. 12, 2022), *aff'd*, 2024 WL 808797 (9th Cir. Feb. 27, 2024), is instructive. The plaintiff there alleged that Netflix "used its sophisticated, targeted recommendation systems to push a [s]how" on minors, causing a suicide. Am. Compl. ¶ 6, *Estate of B.H. v. Netflix, Inc.*, No. 21-6561 (N.D. Cal. Sept. 22, 2021), ECF No. 22. The court dismissed the product liability claims, holding they were impermissibly "premised on the content and dissemination of the show" and explaining there is "no strict liability for books, movies, or other forms of media." 2022 WL 551701, at *3. Here, too, product liability law cannot be used to hold the Platform Defendants liable for disseminating "addictive" or "defective" speech.

*Third*, the platforms are services, not products. They provide access to games and other online apps, similar to a bookstore that makes books available to interested readers, to which Georgia product liability laws do not apply. *See Anglin v. BI LO, LLC*, 640 F. Supp. 3d 1393, 1404 (S.D. Ga. 2022) (provider of services not liable under Georgia product liability law), *aff'd*, 2023 WL 6232511 (11th Cir. Sept. 26, 2023); *Seaboard Coast Line R.R. v. Mobil Chem. Co.*, 323 S.E.2d 849, 852 (Ga. Ct. App. 1984) (Georgia strict liability "is not applicable to the providers of

---

[11] To the extent the Complaint describes possible injuries from "social features" provided by Microsoft's platforms (despite no allegation Plaintiff used those features), those hypothetical injuries are alleged to result from user communications that encourage additional gameplay. They thus would be entirely derivative of transmitted "information." *See* Compl. ¶¶ 308–312.

services"); *S K Hand Tool Corp. v. Lowman*, 479 S.E.2d 103, 106 (Ga. Ct. App. 1996) ("the nature of a [product] liability claim is not that services were negligently provided"); Developers' Brief § II.C.1. Courts nationwide have dismissed similar product liability claims against online platforms for similar reasons. *See, e.g.*, *Jackson v. Airbnb, Inc*., 639 F. Supp. 3d 994, 1010–11 (C.D. Cal. 2022); *Eberhart v. Amazon.com, Inc.*, 325 F. Supp. 3d 393, 399 (S.D.N.Y. 2018); *Ziencik v. Snap, Inc.*, 2023 WL 2638314, at *1, *4 (C.D. Cal. Feb. 3, 2023); *Grossman v. Rockaway Twp.,* 2019 WL 2649153, at *4, *15–16 (N.J. Super. Ct. June 10, 2019) (as to Snap).

*Fourth*, Plaintiff does not identify any supposed design defect in the platforms. *See Brazil v. Janssen Rsch. & Dev. LLC*, 196 F. Supp. 3d 1351, 1357 (N.D. Ga. 2016) (stating requirements for pleading product defects); *see also Coney v. Mylan Pharms., Inc.*, 2012 WL 170143, at *6 (S.D. Ga. Jan. 19, 2012) ("[A] complaint is deficient if it fails to allege a specific design or manufacturing defect."). Plaintiff vaguely asserts that the Platform Defendants designed their platforms "to attract users to purchase games and in-game content" and "addict minors." Compl. ¶¶ 305, 323, 542(a)–(b), 758(a)–(b). With respect to Nintendo, Plaintiff does not identify a single design feature that supposedly renders the Nintendo eShop services themselves addictive, let alone defective, much less a design feature that caused an injury to Plaintiff.

Plaintiff's conclusory allegations about Microsoft's Xbox Services fare no better. Plaintiff asserts that the "ease of access, quest challenges, and constantly evolving game library" in the Xbox Cloud Gaming library "keeps [players] coming back" and that Xbox Cloud Gaming has a "social media-esque feature" that encourage users to "log-in more often and for longer periods[.]" Compl. ¶¶ 306, 309–310, 312. Beyond underscoring that their product liability claims turn upon the content of the third-party games, *see supra* § I.B.1, these allegations do nothing to identify a defect in any Microsoft service. And Plaintiff fails to allege that he ever used any communication

function, let alone was addicted to it.

    **B.**    **Plaintiff's Negligence Claims Fail.**

    Plaintiff's negligence claims (Counts IV through IX, and XIII) fail because the Platform Defendants did not owe a legal or statutory duty of care to Plaintiff. *See Dutt v. Mannar & Co., LLC*, 841 S.E.2d 132, 134 (Ga. Ct. App. 2020) (plaintiff pursuing a negligence claim must show a duty "imposed by a valid statutory enactment of the legislature or . . . a recognized common law principle declared in the reported decisions of [Georgia] appellate courts"); *Dep't of Lab. v. McConnell*, 828 S.E.2d 352, 358 (Ga. 2019) (rejecting existence of a general legal duty "to all the world not to subject [others] to an unreasonable risk of harm").

    **1.**    **Georgia Law Imposes No Duty to Protect from or Warn About Third-Party Harms.**

    As explained in the Developer Defendants' Brief, those who create expressive speech owe no common law duty to the public regarding that speech. *See* Developer Defendants' Brief § II.D. But the Platform Defendants owe no common law duty to Plaintiff for an additional reason: A party providing access to third-party speech has no legally cognizable duty to protect or warn against the potential harms associated with such speech. *See Shortnacy v. N. Atl. Internal Med., P.C.*, 556 S.E.2d 209, 213 (Ga. Ct. App. 2001) ("Generally, there is no duty to control the conduct of third persons to prevent them from causing physical harm to others.").[12] After all, no

---

[12] Plaintiff vaguely suggests Georgia's Fair Business Practices Act ("FBPA"), O.C.G.A. § 10-1-390 *et seq.*, gives rise to a duty to not engage in deceptive business practices. Compl. ¶¶ 710–711. But the FBPA forecloses liability absent 30-day pre-litigation notice, which Plaintiff did not provide. *See* O.C.G.A. § 10-1-399; *see Alvear v. Sandy Springs Toyota, Inc.*, 775 S.E.2d 172, 177 (Ga. Ct. App. 2015) (collecting cases). Plus, Plaintiff's allegations are "personal to him and do not have a potential harmful effect on the consuming public generally," as required to state a claim under the FBPA. *Burdakin v. Hub Motor Co.*, 357 S.E.2d 839, 840–41 (Ga. Ct. App. 1987). The complaint alleges that only 3–4% of the hundreds of millions of videogame users are "extreme gamers." Compl. ¶ 217.

intermediary service "could function if a duty of care was created" anytime the service "facilitate[d]" the dissemination of others' "content." *Dyroff*, 934 F.3d at 1101 (citing *Klayman*, 753 F.3d at 1359–60).

Georgia law recognizes limited exceptions to this rule, applicable only if (1) a special relation between an actor and a third person imposes a duty upon the actor to control the third person's conduct, or (2) a special relation between an actor and a third person gives the third person a right to protection, such as by police. *Shortnacy*, 556 S.E.2d at 213–14; *cf. Bradley Ctr., Inc. v. Wessner*, 296 S.E.2d 693, 696 (Ga. 1982) (finding special relation where mental hospital had "take[n] charge of" a patient and knew or should have known of risk of "bodily harm to others if not controlled"). Plaintiff does not and cannot plausibly allege a special relation here. The Platform Defendants offer a broad array of games and other applications, most of which are unrelated to Plaintiff's allegations, and the games at issue here are created by third parties, not the Platform Defendants.[13]

### 2.    Plaintiff Fails to State a Negligence *Per Se* Claim Based on Alleged COPPA Violations.

Plaintiff's attempt to craft a negligence *per se* claim by alleging a statutory duty of care purportedly imposed by COPPA, 15 U.S.C. § 6501 *et seq.*, fails for the reasons set out in the Developers' Brief, including that there is no private right of action under COPPA. *See* Developers'

---

[13] Plus, any such duty would not only be nearly impossible to administer but also chill speech. That is why courts nationwide have held that online platforms—including some of the very platforms involved in similar video game litigations—do not owe a duty of care in negligence to their users or the public at large regarding potentially harmful third-party content. *See, e.g.*, *Ginsberg*, 586 F. Supp. 3d at 1009 ("Google does not owe a general duty to the public based on its operation of the Play Store"); *Klayman*, 753 F.3d at 1359–60 (no special relationship between social media platform and its users); *Sanders*, 188 F. Supp. 2d at 1275 (game developers and platforms owe no duty to third parties with respect to harmful game content); *James v. Meow Media, Inc.*, 300 F.3d 683, 693–94 (6th Cir. 2002) (same).

Brief § II.E. In addition, Plaintiff does not plausibly allege that the Platform Defendants violated COPPA and caused injury as a result of a statutory violation, as required for a negligence *per se* claim.

When COPPA was amended in 2013, the FTC affirmed that "platforms, such as Google Play or the App Store, that offer access to someone else's child-directed content" can only be liable if they had "actual knowledge that they [were] collecting personal information directly from users of a child-directed site." Statement of Basis and Purpose, Children's Online Privacy Protection Rule, 78 Fed. Reg. 3972, 3997–98 (Jan. 17, 2013). Plaintiff does not specifically allege that he used either of the Platform Defendants' platforms when under 13.[14] Nor does he allege that either of the Platform Defendants collected any personal information from him when he was a minor, much less that any collection was done with actual knowledge of his age at the time and without parental consent, as required to establish a COPPA violation. Compl. ¶¶ 667–691.[15] *See* FTC, Complying with COPPA: Frequently Asked Questions A.12 and D.4 (July 2020), https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions#A.%20General%20Questions (operators can rely on the age information provided by a user in the age screen); *see also, e.g.*, *New Mexico ex rel. Balderas v. Tiny Lab Prods.*, 457 F. Supp. 3d 1103, 1116 (D.N.M. 2020) (dismissing COPPA claim for failure to plausibly allege actual knowledge), *on reconsideration*, 516 F. Supp. 3d 1293 (D.N.M. 2021); *In re VTech Data Breach*

---

[14] For example, Plaintiff alleges only that he plays Fortnite on the Nintendo Switch. Compl. ¶ 23. He further alleges that Fortnite was first released in 2017, when Plaintiff was, at minimum, 17— well over the age when a COPPA violation could have occurred. *Id.* ¶¶ 29, 469, 471, 472, 473, 474, 479; *see also* 15 U.S.C.A. § 6501(1) ("child" means an "individual under the age of 13").

[15] The only purported COPPA violations Plaintiff asserts concern the Platform Defendants' alleged facilitation of game-related transactions. *See* Compl. ¶¶ 678, 679(g), 680. He does not allege any facts that, if true, would show that the Platform Defendants collected Plaintiff's personal information as part of those alleged transactions, that the Platform Defendants knew Plaintiff's age at the time, or that the Platform Defendants did so without parental consent.

*Litig.*, 2018 WL 1863953, at *7 (N.D. Ill. Apr. 18, 2018) (similar).

### 3. Georgia's UDTPA Safe Harbor Bars Plaintiff's Negligence Claim Premised on a UDTPA Violation.

Plaintiff cannot premise a legal duty on the obligation under Georgia law to not engage in deceptive trade practices. Compl. ¶¶ 711, 718, 748–749. Georgia's trade practices statute provides a safe harbor for publishers, barring claims against "[p]ublishers . . . engaged in the dissemination of information . . . without knowledge of its deceptive character." O.C.G.A. § 10-1-374(a)(2).[16] Here, Plaintiff does not plausibly allege that the Platform Defendants knew the games were "deceptive." At most, he says the Platform Defendants knew that several games on their platforms "contained an inherent risk of abuse, addiction, and compulsive use by youth," Compl. ¶ 777(a)–(b)—not that they are "deceptive." That is not enough to overcome the UDTPA's safe harbor.

### C. Plaintiff's Fraud-Based Claims Fail.

Plaintiff's fraud-based claims (Counts XI through XIII, XIVa) against the Platform Defendants fail for the reasons identified in the Developers' Brief. They also fail as to the Platform Defendants for additional reasons.

Plaintiff fails to identify *any* allegedly misleading statement whatsoever by Nintendo. *Quashie v. Olympus Am., Inc.*, 315 F. Supp. 3d 1329, 1340–41 (N.D. Ga. 2018) (dismissing under Rule 9(b) where plaintiff did not "identify a single statement with specificity—that is, . . . the time and date of the statement, the specific place . . . , the defendant who made the statement, or the precise details of the statement"). Plaintiff vaguely asserts that the Platform Defendants

---

[16] Other courts have applied similar safe harbors to exempt publishers of third-party content from liability. *See, e.g.*, *Sheridan v. iHeartMedia, Inc.*, 255 F. Supp. 3d 767, 775 (N.D. Ill. 2017) (Illinois UDPTA "exempts [broadcasters] wholesale from any potentially deceptive broadcast" "regardless of its content"); *Karpinski v. Union Leader Corp.*, 2019 WL 3203144, at *8 (D.N.H. July 16, 2019) (newspaper exempted from liability for publication of article).

"misrepresented" that their platforms were "safe for use by minors and young adults," Compl. ¶ 775(a)–(b), but does not specify what statements were made, where, by whom, or how they influenced Plaintiff's decision to use the platforms, which falls far short of Rule 9(b)'s requirements. *See Maddox v. Aldridge Pite, LLP*, 2024 WL 1475463, at *4 (11th Cir. Apr. 5, 2024) (Rule 9(b) requires fraudulent misrepresentation be pled with particularity); *Dixon v. Allergan USA, Inc*., 645 F. App'x 930, 932 (11th Cir. 2016) (affirming dismissal under Rule 9(b) where plaintiff did not allege with particularity "the misrepresentations' falsity or how they are misleading"); *Inman v. Am. Paramount Fin*., 517 F. App'x 744, 748 (11th Cir. 2013) (same where plaintiff failed to plead with specificity the statements or omissions that were allegedly made).

As to Microsoft, Plaintiff identifies only one statement—that the Xbox Store is "safer for the whole family," Compl. ¶ 289—but he does not explain why the statement was false, as required under Rule 9(b). *See Next Century Commc'ns Corp. v. Ellis*, 171 F. Supp. 2d 1374, 1380 (N.D. Ga. 2001) (dismissing fraud claim where plaintiff "fail[ed] to allege any facts supporting an inference that Defendant knew these statements to be false"). Nor could he: generalized statements of opinion like this are not actionable as a matter of law, and further, are protected by the First Amendment. *See Lowe v. SEC*, 472 U.S. 181, 210 n.58 (1985) ("expression of opinion about a commercial product" is "protected by the First Amendment"); *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1292 (11th Cir. 2010) (affirming dismissal of fraud claims based on advertisements "amount[ing] at most to puffery, not fraud"); *Infrasource, Inc. v. Hahn Yalena Corp.*, 613 S.E.2d 144, 148 (Ga. Ct. App. 2005) ("Representations concerning expectations and hopes are not actionable."); *Anastasio v. Internap Network Servs. Corp.*, 2011 WL 13124500, at *9 (N.D. Ga. Sept. 30, 2011) (statement about trust and safety was "soft, puffing statement[ ]").

Plaintiff also fails to allege any facts showing that he saw Microsoft's alleged statement,

let alone relied on it before using Microsoft's services. This failure to plead reliance provides an independent basis for dismissal under Rule 9(b). *See Knieper v. Forest Grp. USA, Inc.*, 2016 WL 9449794, at *6 (N.D. Ga. Sept. 12, 2016) ("Reliance must be specifically supported by factual allegations"; dismissing for this reason), *order clarified*, 2017 WL 3449601 (N.D. Ga. Jan. 23, 2017); *Bauser v. Porsche Cars N. Am., Inc.*, 2024 WL 2406884, at *14 (N.D. Ga. Mar. 25, 2024) (dismissing fraud claim where complaint was "devoid of specific allegations that Plaintiff viewed the [statement at issue] prior to purchasing his vehicle," which defeated reliance).

Insofar as Plaintiff seeks to pursue a fraud claim with a theory of *omission*, such a claim is similarly deficient under Rule 9(b). *See Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). In omissions cases, Rule 9(b) requires, among other things, allegations setting forth "precisely what . . . omissions were made" and who was responsible for them. *Id.* Here, Plaintiff fails to identify with any degree of particularity what material information and/or statements the Platform Defendants supposedly concealed, how that information was not otherwise reasonably accessible to Plaintiff, or how any such omissions induced detrimental reliance by Plaintiff. *Coleman v. H2S Holdings, LLC*, 230 F. Supp. 3d 1313, 1321 (N.D. Ga. 2017) (fraudulent concealment claim requires an "intention to induce the plaintiff to act or refrain from acting"), *aff'd sub nom. Coleman v. Oasis Outsourcing, Inc.*, 779 F. App'x 649 (11th Cir. 2019); *Marion A. Allen, Inc. v. Johnston*, 903 S.E.2d 334, 337 (Ga. Ct. App. 2024) (plaintiff "who alleges fraudulent concealment must prove . . . that he or she could not have discovered the alleged defect in the exercise of due diligence."); *see, e.g.*, Compl. ¶ 791(a)–(b).

Moreover, a fraud by omission claim, including a claim for fraudulent concealment, requires proof that the Platform Defendants had a legal duty to disclose the omitted information. *Williams v. Dresser Indus., Inc.*, 120 F.3d 1163, 1167 (11th Cir. 1997); *Smith v. K-V Pharm. Co.*,

2009 WL 10665762, at *4 (N.D. Ga. Sept. 24, 2009) (fraudulent concealment claim requires "duty to disclose the information she alleges was concealed"); *Sec. Life of Denver Ins. Co. v. Shah*, 2012 WL 4321601, at *5 (S.D. Ga. Sept. 18, 2012) (dismissing fraudulent concealment claim because defendant "had no duty to disclose and, as a result, cannot be held liable for fraudulent concealment"). Such a duty arises only where parties were in a "confidential or fiduciary relationship" or there are other "particular circumstances," which courts have only found where there was a "dependent relationship[] sufficient to overcome [the plaintiff's] will." *Mitchell v. Ford Motor Credit Co.*, 68 F. Supp. 2d 1315, 1319–20 (N.D. Ga. 1998); *McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1358 (N.D. Ga. 2015) (no duty to disclose where seller had no contractual relationship with plaintiff and did not make misrepresentation directly to plaintiff). Plaintiff does not, and cannot, allege such a relationship between himself and the Platform Defendants, precluding him from transforming his alleged failure to warn into an actionable fraud claim.

This alone is sufficient to dismiss Plaintiff's omission-based claims. But it also is notable that Plaintiff relies exclusively on publicly available information for his addiction claims. *See, e.g.*, Compl. ¶¶ 241–262 (discussing literature). Where, as here, Plaintiff had reasonable access to the allegedly concealed information, the information cannot have been fraudulently omitted or concealed. *See, e.g., Martin v. BioLab, Inc.*, 2008 WL 11322914, at *6 (N.D. Ga. Mar. 31, 2008) (dismissing fraud claim where allegedly concealed facts were public record); *Paredes v. Bank of America, N.A.*, 2018 WL 1071935, at *3 (M.D. Fla. Feb. 27, 2018) (dismissing fraud claim where plaintiff "fail[ed] to verify the statements with publicly available information"); *Halberstein Inv., Ltd. v. Lehman Bros., Inc.*, 2006 WL 314334, at *6 (S.D. Fla. Jan. 10, 2006) (finding no duty to disclose information that was publicly available).

### D.    The Platform Defendants Did Not Proximately Cause Plaintiff's Alleged Injuries.

Proximate (or legal) causation is an essential requirement of all of Plaintiff's claims and the statutory claims on which Plaintiff attempt to premise his negligence claim. *See* Developers' Brief § II.B. As the Developer Defendants argue, Plaintiff cannot establish causation—especially given the role of parents in making decisions on behalf of minors regarding gaming access and purchases. *Id*. In addition, Plaintiff fails to plausibly plead that the Platform Defendants proximately caused Plaintiff's alleged injuries by allowing people to access certain video games and facilitating payments for in-game transactions, which is all he alleges they have done.

"Proximate cause is that which, in the natural and continuous sequence, unbroken by other causes, produces an event, and without which the event would not have occurred." *Johnson v. Avis Rent A Car Sys., LLC*, 858 S.E.2d 23, 29 (Ga. 2021) (affirming lack of proximate cause as a matter of law). As numerous courts have held, simply making third-party content available or helping disseminate it is not enough to allege proximate cause of injuries purportedly arising from that third-party content. *See, e.g.*, *Chi. Lawyers' Comm. for Civil Rts. Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008) ("Doubtless craigslist plays a causal role in the sense that no one could post a discriminatory ad if craigslist did not offer a forum. That is not, however, a useful definition of cause."); *accord Crosby v. Twitter, Inc.*, 921 F.3d 617, 625 (6th Cir. 2019) (affirming dismissal for lack of causation in case against online platforms alleging liability from terrorist material they allegedly disseminated); *Fields v. Twitter, Inc*., 881 F.3d 739, 749 (9th Cir. 2018) (similar).

Moreover, Plaintiff asserts he plays "across multiple platforms," not limited to the Platform Defendants' platforms. Compl. ¶¶ 23, 264–265. Although he allegedly spends up to nine hours per day playing video games, Plaintiff does not specify how much he plays on each platform. *Id*.

Plaintiff's theory of injury, in other words, fails to distinguish between the devices on which he allegedly accessed the allegedly harmful third-party content, further highlighting his failure to allege a causal link between any specific Platform Defendant and Plaintiff's alleged addiction. *See, e.g.*, *Brazil v. Janssen Rsch. & Dev. LLC*, 249 F. Supp. 3d 1321, 1338 (N.D. Ga. 2016) (dismissing case where plaintiff had "not tied [the alleged] harm to any design or manufacturing defect" and did not "distinguish[ ] between any of the Defendants"); *Roca Labs, Inc. v. Consumer Opinion Corp.*, 2014 WL 6389657, at *6 (M.D. Fla. Nov. 16, 2014) (no causation where harm stemmed from content posted by others).

Nor can Plaintiff establish causation between the Platform Defendants' purported role in so-called microtransactions and any alleged harm. A plaintiff who claims damages must allege facts linking his damages to the conduct of, or a product supplied by, the defendant. *See Barnes v. AstraZeneca Pharms. LP*, 253 F. Supp. 3d 1168, 1173–74 (N.D. Ga. 2017) (dismissing tort claims where plaintiff listed "the elements of negligence and [drew] a wished-for conclusion" regarding causation as not "proper pleading"). Here, Plaintiff makes generalized allegations about purchases but does not allege any specific microtransactions he made associated with the third-party games on Nintendo's or Microsoft's platforms. He vaguely claims to have spent "thousands of dollars" on unspecified "products"—but nowhere links the alleged payments to the Platform Defendants, much less to microtransactions made on those services. Compl. ¶ 691. That is not enough to plead causation. *E.g.*, *Ochoa v. Zeroo Gravity Games, LLC*, 2023 WL 4291974, at *8 (C.D. Cal. Feb. 1, 2023) (no causation for claim against online gaming app where plaintiff "did not personally download it or make a purchase within it").

### E.      Plaintiff's Remaining Claims Against the Platform Defendants Fail.

Finally, Plaintiff's claims for IIED (Counts X), conspiracy (Count XIVb), and in-concert

liability (Count XV) fail for the same reasons detailed by the Developer Defendants, *see* Developers' Brief §§ II.G–H, in addition to the lack of duty and causation.

<u>**CONCLUSION**</u>

For these reasons, as well as those set out in the Developers' Brief, which the Platform Defendants incorporate as set forth above, all the claims asserted against the Platform Defendants should be dismissed with prejudice.

Dated: September 17, 2024

Respectfully submitted,

By:  */s/ Megan B. Poetzel*

Todd P. Davis
Georgia Bar No. 213040
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA  30309
Telephone: (404) 572-4600
tdavis@kslaw.com

Ambika Kumar*
DAVIS WRIGHT TREMAINE LLP
920 5th Ave., Suite 3300
Seattle, WA 98104-1610
Tel.: (206) 757-8030
ambikakumar@dwt.com
sarafairchild@dwt.com

Adam S. Sieff*
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa St., 24th Floor
Los Angeles, CA 90017-2566
Tel.: (213) 633-8618
adamsieff@dwt.com

Kathryn Cahoy (*Pro Hac Vice*)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4735
kcahoy@cov.com

David Sneed (*Pro Hac Vice*)
Gary M. Rubman*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-6000
Fax: (202) 778-6000
dsneed@cov.com
grubman@cov.com

Carol P. Michel
Georgia Bar No. 504046
WEINBERG WHEELER HUDGINS
GUNN & DIAL
3344 Peachtree Road NE
Suite 2400
Atlanta, GA 30326
Tel.: (404) 832-9510
Fax: (702) 938-3864
cmichel@wwhgd.com

Megan B. Poetzel (*Pro Hac Vice*)
Andrianna D. Kastanek (*Pro Hac Vice*)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
mpoetzel@jenner.com
akastanek@jenner.com

Alison I. Stein (*Pro Hac Vice*)
Isabel Farhi (*Pro Hac Vice*)
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036-2711
Tel.: (212) 891-1600
astein@jenner.com
ifarhi@jenner.com

*Attorneys for Defendant*
*Nintendo of America Inc.*

*Pro hac vice forthcoming

*Attorneys for Defendant Microsoft
Corporation*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on the 17th day of September, 2024, the foregoing document was electronically filed with the Clerk of Court by using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Megan B. Poetzel
Megan B. Poetzel (*Pro Hac Vice*)